**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| **GAMEHANCEMENT, LLC,** | |
| Plaintiff, | |
| v. | Civil Action No. 3:24-cv-0740-MHL |
| | Jury Trial Demanded |
| **FOOTAGE FIRM INC.,** | |
| Defendant. | |

**PLAINTIFF GAMEHANCEMENT LLC'S RESPONSE IN OPPOSITION TO
DEFENDANT FOOTAGE FIRM LLC'S MOTION TO DISMISS**

Plaintiff Gamehancement, LLC ("Gamehancement" or "Plaintiff") submits this brief in opposition to the Motion to Dismiss (the "Motion") filed by Defendant Footage Firm LLC ("Footage Firm" or "Defendant"). For the reasons set forth below, the Motion should be denied.

I.      **INTRODUCTION**

Footage Firm's Motion to Dismiss prematurely asks this Court to resolve factual disputes about patent eligibility that are inappropriate at the pleading stage. Indeed, at *Alice* Step One, Footage Firm cannot even articulate a cognizable "abstract idea" that the '643 Patent supposedly embodies. Meanwhile, Footage Firm ignores the patent's explicit technological improvements to visual presentation systems—improvements that the Federal Circuit has recognized as hallmarks of patent-eligible subject matter. Footage Firm's analysis relies on precisely the kind of claim oversimplification that the Federal Circuit has repeatedly condemned. The well-pleaded allegations of inventiveness in Plaintiff's complaint must be accepted as true, yet Footage Firm dismisses them without basis at *Alice* Step Two, improperly asking the Court to determine conventionality without evidentiary support.

As argued herein, the Motion offers no credible basis for dismissal and should be denied.

## II.    TECHNICAL BACKGROUND OF THE '643 PATENT

Prior to the inventions of the '643 Patent, "prior art multimedia slideshow applications" had significant "shortcoming[s]." Dkt. No. 12 at ¶ 10 (quoting '643 Patent, 2:3-4).

For example, "it is often the case that during a slideshow the presenter will deviate from a planned sequence of slides." Dkt. No. 12 at ¶ 11 (quoting '643 Patent, 2:3-4). In "prior art systems" and methods, however, "when the slides are presented out of sequence, either an inappropriate transition effect is displayed (e.g., when the planned transition is from slide 5 to slide 6 with transition effect E to be displayed therebetween, but instead the presenter transitions in an unplanned sequence from slide 5 back to slide 2, transition effect E is displayed even though it is not aesthetically congruous with a slide 5 to slide 2 transition) or an unaesthetic default transition effect is used (e.g., a straight cut)." *Id.* (quoting '643 Patent, 2:6-18).

"Thus, while using prior art multimedia slideshow applications, if presenters deviated from a planned sequence during live presentations—for instance, to address audience questions—presentations made using prior art methods and systems would either display inappropriate transition effects that were incongruous with the actual transition being made, disrupting the flow of information to viewers, or would default to basic 'straight cut' transitions that appeared unprofessional and jarred viewers' attention away from the presentation content." Dkt. No. 12 at ¶ 12.

These technical limitations meant that dynamic, non-linear navigation of slides during live presentations was effectively impossible without compromising the professional quality of the visual experience. Dkt. No. 12 at ¶ 13.

"When such 'unplanned' and unaesthetic transition effects are displayed during a presentation, especially in the middle of a presentation incorporating aesthetic transitions, the audiences attention often will shift to the inappropriate and many times disruptive transition effect and away from the presenters message." Dkt. No. 12 at ¶ 14 (quoting '643 Patent, 2:18-24).

2

"In such cases where slides are likely to be presented out of sequence, the transition effect planned for a transition from slide 4 to slide 5 may not be appropriate for a transition from slide 4 back to slide 2." Dkt. No. 12 at ¶ 15 (quoting '643 Patent, 7:3-6).

"The '643 Patent addressed these technical problems through inventive and unconventional methods allowing appropriate transition effects for any possible transition between display states.  At the heart of this solution is a method that associates specific transition effects with each potential pair of display configuration states, enabling the presenter to display aesthetically appropriate transitions in real-time while navigating between slides." Dkt. No. 12 at ¶ 16.

"The claimed methods fundamentally improved the efficiency of presentation methods, particularly when performed on computer-based presentation systems, by eliminating the computer processing overhead required to handle transition effect configurations." Dkt. No. 12 at ¶ 17. "The claimed methods enabled new functionality that was not previously possible, including truly dynamic, non-linear navigation during live presentations while maintaining professional-quality transitions. By following the claimed methods, instant navigation between any slides while maintaining visual continuity was possible. This represented a significant advancement over prior art systems, which could not maintain visual quality during dynamic navigation." *Id.*

"Toward this end, one of the features of the present invention is an association of an appropriate transition effect with each pair of current-to next state transitions that may potentially occur during a presentation. Because the selection of an appropriate transition effect is predefined for all state transitions that may occur during a presentation, the present invention eliminates the possibility of an inappropriate transition effect being implemented during the presentation, thereby increasing the professional quality of the presentation. This feature of the invention is also helpful for presentations where no predetermined slide sequence exists because it allows a presenter or viewer to make 'on the fly' determinations as to the order of slides

without going through the hassle of selecting an appropriate transition effect for each transition and without worrying whether the selected transitions are appropriate." Dkt. No. 12 at ¶ 18 (quoting '643 Patent, 7:6-21).

Further, the '643 Patent recognized that "as the is often the case that during the presentation, the presenter will decide to change the sequence, either in response to audience feed back (e.g., going back to a previous slide to review a previous topic or skipping to a later slide to address an audience question that arises) or a spur of the moment desire. In such situations, the presenter can alter the planned sequence by simply selecting the slide in area 222 that he/she wishes the audience to view next. In such cases, because the appropriate transition effects for the present invention are predefined for all possible pairs of successive display configuration states, the transition from one slide to the next will appear natural even whether or not it was planned in advance." Dkt. No. 12 at ¶ 19 (quoting '643 Patent, 10:49-62).

"Thus, the claimed methods spared users from the time-consuming operations of navigating to an appropriate transition effect, selecting it, and then implementing it whenever the slide order is changed or a new slide is selected. Further, the claimed methods allowed users to access the desired slide more quickly without first being forced to select an appropriate transition effect, improving the efficiency of the user's navigation of presentation software and of the computer itself." Dkt. No. 12 at ¶ 20.

These, among other inventive concepts, are captured in the limitations of Claim 16, reciting the steps of "for each pair of potentially successive visual display configuration states, associating a transition effect therewith" and "receiving transition input indicative to transition from a current visual display configuration state to a next visual display configuration state, the transition defining a pair of successive visual display configuration states." Dkt. No. 12 at ¶ 21. Further, as alleged, the "inventive and unconventional method of Claim 16 is not and cannot be performed in the human mind." *Id*. at ¶ 22.

4

### III.   ARGUMENT

**A. Footage Firm's Section 101 Arguments Are Premature and Raise Disputed Issues of Fact That Preclude Resolution of Section 101 Issues at the Pleading Stage**

The analysis of patent-eligibility under 35 U.S.C. § 101 involves "question[s] of fact," such as "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field." *Berkheimer v. HP Inc*., 881 F.3d 1360, 1368 (Fed. Cir. 2018). Thus, "plausible and specific factual allegations that aspects of the claims are inventive are sufficient" to "defeat[] a motion to dismiss." *Cellspin Soft, Inc. v. Fitbit, Inc*., 927 F.3d 1306, 1317 (Fed. Cir. 2019) (stating that "factual disputes about whether an aspect of the claims is inventive may preclude dismissal at the pleadings stage under § 101," and noting that "[w]e have no basis, at the pleadings stage, to say that these claimed techniques, among others, were well-known or conventional as a matter of law"); *see also Aatrix Software, Inc. v. Green Shades Software, Inc*., 882 F.3d 1121, 1126–27 (Fed. Cir. 2018) (finding factual allegations of patentee's complaint sufficient to survive a motion to dismiss and stating that "patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6)"). Therefore, where a disputed issue of fact relevant to the analysis of patent-eligibility under Section 101 exists, eligibility may not be resolved at the pleading stage.

Many courts have found that "the issue" of eligibility under Section 101 "is inherently ill suited to adjudication at the pleading stage, particularly when the dispute turns on whether the claims are impermissibly abstract," as here. *Ubiquitous Connectivity, LP v. Cent. Sec. Grp. - Nationwide, Inc*., No. 18-CV-368-JED-CDL, 2021 WL 1970664, at *3–4 (N.D. Okla. May 17, 2021). "'Determining patent eligibility requires a full understanding of the basic character of the claimed subject matter'…but the two tools mostly likely to aid the court in developing such an understanding—claim construction and the presentation of expert testimony—will not ordinarily

have occurred at the dismissal stage." *Id.* (quoting *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019)). Further, the "Alice test is notoriously difficult to apply, even in the best of circumstances. In a recent survey of judges who frequently handle patent cases, respondents rated eligibility under § 101 to be the most difficult issue of patent validity and the area of patent law with the least doctrinal clarity." *Id.* (citing Matthew G. Sipe, *Patent Law 101: The View From the Bench*, 88 Geo. Wash. L. Rev. Arguendo 21, 29 (2020)). "When this task is undertaken at the pleading stage, where a court cannot benefit from the claim construction process and a developed factual record, accuracy will be the exception rather than the rule." *Id.*

Indeed, "[r]esolving validity issues at the Rule 12 stage can also tempt courts, sometimes improperly, to conclude that certain concepts are conventional or routine by way of judicial notice." *Intellectual Ventures II LLC v. FedEx Corp.*, 2017 WL 6002762, at *2 n. 1 (E.D. Tex. 2017) (Gilstrap. J.).

For these reasons, many courts have found "it is wiser and more efficient to wait to determine a patent's § 101 eligibility until after fact discovery has opened" and "after issuing its claim construction order." *Slyce Acquisition Inc. v. Syte - Visual Conception Ltd.*, No. W-19-CV-257, 2020 WL 278481, *3–7 (W.D. Tex. Jan. 10, 2020) (noting, *inter alia*, that "a Rule 12(b) motion to dismiss is a procedurally awkward place for a court resolve a patent's § 101 eligibility"); *see also e-Numerate Sols., Inc. v. United States,* 149 Fed. Cl. 563, 577–79 (2020) (accord).

As argued further herein, Footage Firm's Motion is premature in that it raises factual and issues that cannot be resolved at this stage—such as whether the claimed methods are "conventional"—and should be denied on that basis alone.

## B. The '643 Patent Claims Patent-Eligible Improvements in Methods for Controlling Visual Presentation of Data, Not "Abstract Ideas"

Claim 16 not directed to an abstract idea, but rather to a specific technological improvement that addressed the deficiencies of the prior art and improved computer

6

functionality, similar to those found patent-eligible in *Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 425 F. Supp. 3d 601, 612 (E.D. Va. 2019). In *Symantec*, this Court found that "when the patent claims disclose an idea that does more" than recite "perfectly conventional" activity—such as "improve computer functionality"—"the patent claims are not abstract ideas and satisfy the requirements of § 101." *Id.* at 612.

As alleged in Plaintiff's Complaint, "The claimed methods fundamentally improved the efficiency of presentation methods, particularly when performed on computer-based presentation systems, by eliminating the computer processing overhead required to handle transition effect configurations." Dkt. No. 12 at ¶ 17. "This represented a significant advancement over prior art systems, which could not maintain visual quality during dynamic navigation." *Id.* Like the claimed improvement in Core Wireless, this is precisely the kind of "technological solution to a technological problem" that renders claims non-abstract under Step One. In *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1363 (Fed. Cir. 2018), the Federal Circuit found claims patent-eligible because they were "directed to an improvement in the functioning of computers, particularly those with small screens." The Federal Circuit held that "[d]isplaying selected data or functions of interest in the summary window allows the user to see the most relevant data or functions without actually opening the application up." *Core Wireless*, 880 F.3d at 1363. Thus, the "speed of a speed of a user's navigation through various views and windows can be improved because it "saves the user from navigating to the required application, opening it up, and then navigating within that application to enable the data of interest to be seen or a function of interest to be activated."

Like the claims in *Core Wireless* that improved the efficiency of using electronic devices by bringing together a limited list of common functions that could be accessed directly from the main menu, Claim 16 the '643 Patent improves efficiency by "spar[ing] users from the time-consuming operations of navigating to an appropriate transition effect, selecting it, and then implementing it whenever the slide order is changed or a new slide is selected." Dkt. No. 12 at ¶

20. "Further, the claimed methods allowed users to access the desired slide more quickly without first being forced to select an appropriate transition effect, improving the efficiency of the user's navigation of presentation software and of the computer itself." *Id*.

Footage Firm's proposed "abstract idea"—that of "of applying transition effects between visual displays"—fails to pass muster. As an initial matter, Footage Firm's proposed "abstract idea" is so narrow and so clearly within the technological framework of Claim 16 that it can hardly be called "abstract" at all. Indeed, Footage Firm's version of an "abstract idea" sounds much more like a "patent-eligible application" than an abstraction, which is typically analogized to long-standing human activity, or involves invoking computers merely as a "tool." *Symantec Corp*., 425 F. Supp. 3d at 610. Footage Firm fails to cite any authority supporting that even its own proposed "abstract idea" is "abstract," and this Court should decline to construe it as such. *Id*. (observing that the "Supreme Court has cautioned that a court reviewing a patent must tread carefully in construing the exclusionary principle lest it swallow all of patent law' because at some level all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.") (quotations omitted); *Interval Licensing LLC v. AOL, Inc*., 896 F.3d 1335, 1350 (Fed. Cir. 2018) (Plager, J., concurring) ("That the phrase 'abstract ideas' is a definitional morass can be seen in one simple fact—a search for a definition of 'abstract ideas' in the cases on § 101 from the Supreme Court, as well as from this court, reveals that there is no single, succinct, usable definition anywhere available. The problem with trying to define 'abstract ideas,' and why no court has succeeded in defining it, is that, as applied to as-yet-unknown cases with as-yet-unknown inventions, it cannot be done except through the use of equally abstract terms. As explained in *Amdocs*, the closest our cases come to a definition is to state examples of what prior cases have contained, and which way they were decided. But what anecdotal cases reveal, a definition does not make. The 'abstract ideas' idea, when used for denying a claimed invention's patent eligibility either before or after a patent is issued, cannot thus function as a valid rule of law.").

Nevertheless, Footage Firm manages to impermissibly oversimplify Claim 1 with its proposed "abstract idea." Because "all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas," *Mayo Collaborative Servs. v. Prometheus Labs*., 566 U.S. 66, 71 (2012), "courts 'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims[,]" *McRO Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) ("[D]escribing the claims at [too] high [a] level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule.").

In particular, Footage Firm asserts—without evidence—that the claims "recite conventional functions stated in general terms." Dkt. No. 16 at 10. But Footage Firm's conclusory assertion contravenes Plaintiff's specific allegation that "the claimed methods enabled ***new functionality*** that was not previously possible, including truly dynamic, non-linear navigation during live presentations while maintaining professional-quality transitions. By following the claimed methods, instant navigation between any slides while maintaining visual continuity was possible. This represented a significant advancement over prior art systems, which could not maintain visual quality during dynamic navigation." Dkt. No. 12 at ¶ 17 (emphasis added). Footage Firm does not explain how Claim 16 can merely "recite conventional functions" when Plaintiff alleges they were not even known in the prior art. *Berkheimer*, 881 F.3d at 1369 ("[w]hether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional.").[1]

---

[1] Although many of these arguments are equally applicable to Step Two, the Federal Circuit and this Court have recognized that the two steps of Alice frequently overlap—such as in this Court's decision in Symantec holding claims not abstract at Step One in part because they claimed unconventional improvements to computer efficiency. *See Symantec*, 425 F. Supp. 3d at 611-613.

Footage Firm makes a passing insinuation that the '643 Patent somehow does not explain "how" to achieve a "technological solution," but fails to make an argument to which Plaintiff can meaningfully respond. Dkt. No. 16 at 10. Footage Firm certainly never explains why the claimed method simply claims a result without explaining "how" to achieve it, and such a position is not credible, given the specific limitations of Claim 16. For example, Claim 16's limitation requiring "receiving transition input indicative to transition from a current visual display configuration state to a next visual display configuration state," read in the context of the entire claim, provides ample explanation for how the technological solution is achieved. Claim 16 is far from merely claiming a "result" without a method for achieving it.

Footage Firm also implies, without really arguing, that the claims "seemingly preempt the use of *any* transition effects during the presentation of data." Dkt. No. 16 at 11. Of course, Footage Firm's position is completely belied by any plain reading of the '643 Patent or Claim 16. As Plaintiff alleges and the '643 Patent explains, one of the problems in the "prior art systems and methods" was that "when the slides are presented out of sequence, either an ***inappropriate transition effect*** is displayed (e.g., when the planned transition is from slide 5 to slide 6 with transition effect E to be displayed therebetween, but instead the presenter transitions in an unplanned sequence from slide 5 back to slide 2, transition effect E is displayed even though it is not aesthetically congruous with a slide 5 to slide 2 transition) or an ***unaesthetic default transition effect*** is used (e.g., a straight cut)." Dkt. No. 12 at ¶ 11 (quoting '643 Patent, 2:6-18) (emphasis added).

Thus, the '643 Patent was animated by the problems of using transition effects and the fact that "prior art multimedia slideshow applications" had significant "shortcoming[s]." *Id.* at ¶ 10 ('643 Patent, 2:3-4). As an invention that addressed technological problems in the use of transition effects, it clearly did not set out to preempt the use of "any" transition effects—and, of course, left the problematic prior art methods of using transition effects unclaimed. Footage Firm's assertion makes no sense in light of the '643 Patent specification. Claim 16 itself facially

10

does not "preempt" the "use of any transition effects" and Footage Firm makes no specific argument that it does.

Instead, Footage Firm inappropriately refers to Plaintiff's prior assertions of the '643 Patent as supposedly involving a "wide variety of products." Dkt. No. 16 at 11. But, once again, Footage Firm provides no argument why this is so, and no prior infringement allegations are in evidence. Moreover, it would be improper to consider such extraneous materials at the pleading stage.

Accordingly, Footage Firm has failed to provide clear and convincing evidence that Claim 16 is directed to an "abstract idea," and the Court should deny its Motion on this basis alone. *See Symantec*, 425 F. Supp. 3d at 611-613.

### D. Claim 1 Contains Patent-Eligible Inventive Concepts Under Section 101

At Step Two of the Section 101 analysis, Footage Firm argues there is no inventive concept, because (according to Footage Firm) the claims simple involve "generic computer elements." Dkt. No. 16 at 11-13.

As an initial matter, Footage Firm ignores that inventive technology is frequently comprised of known components. *See BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (noting that an "inventive concept" can be found in the "non-conventional and non-generic arrangement of known, conventional pieces."). Footage Firm also neglects the Federal Circuit's admonition that "[w]hether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional." *Berkheimer*, 881 F.3d at 1369.

More problematically, Footage Firm's arguments improperly contravene the allegations of its Complaint and the '643 Patent itself. Footage Firm has "no basis, at the pleadings stage, to say that these claimed techniques, among others, were well-known or conventional as a matter of law," and the '643 Patent states that they were not. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d

1306, 1318 (Fed. Cir. 2019). Such a determination would involve such disputed issues of fact, such as whether the claimed methods were not only known but "conventional" in the prior art. Plaintiff has specifically alleged and the '643 Patent explains that they were not.

As Plaintiff alleges, the '643 Patent addressed "technical problems" in the prior art "through inventive and unconventional methods allowing appropriate transition effects for any possible transition between display states. At the heart of this solution is a method that associates specific transition effects with each potential pair of display configuration states, enabling the presenter to display aesthetically appropriate transitions in real-time while navigating between slides." Dkt. No. 12 at ¶ 16. "The claimed methods fundamentally improved the efficiency of presentation methods, particularly when performed on computer-based presentation systems, by eliminating the computer processing overhead required to handle transition effect configurations." Dkt. No. 12 at ¶ 17. "The claimed methods enabled new functionality that was not previously possible, including truly dynamic, non-linear navigation during live presentations while maintaining professional-quality transitions. By following the claimed methods, instant navigation between any slides while maintaining visual continuity was possible. This represented a significant advancement over prior art systems, which could not maintain visual quality during dynamic navigation." *Id.*

"Thus, the claimed methods spared users from the time-consuming operations of navigating to an appropriate transition effect, selecting it, and then implementing it whenever the slide order is changed or a new slide is selected. Further, the claimed methods allowed users to access the desired slide more quickly without first being forced to select an appropriate transition effect, improving the efficiency of the user's navigation of presentation software and of the computer itself." Dkt. No. 12 at ¶ 20. These, among other inventive concepts, are captured in the limitations of Claim 16, reciting the steps of "for each pair of potentially successive visual display configuration states, associating a transition effect therewith" and "receiving transition input indicative to transition from a current visual display configuration state to a next visual

display configuration state, the transition defining a pair of successive visual display configuration states." Dkt. No. 12 at ¶ 21.

Footage Firm has no basis to challenge any of these allegations, and its arguments that the claims use "generic computer elements" are irrelevant. The mere fact that otherwise-inventive, patent-eligible methods may use "generic computer elements" is not dispositive. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338 (Fed. Cir. 2016) ("See we are not persuaded that the invention's ability to run on a general-purpose computer dooms the claims."). Given Plaintiff's allegations concerning inventiveness, Footage Firm's Motion is premature and must be denied. *Berkheimer*, 881 F.3d at 1368; *Cellspin Soft*, 927 F.3d at 1317; *Aatrix*, 882 F.3d at 1126. This is also why Footage Firm's reliance on *DriverDo* is inapposite, as *DriverDo* did not involve well-pleaded allegations of inventiveness. *See DriverDo, LLC v. Soc. Auto Transp., Inc*., No. 3:23CV265, 2024 WL 1376218, at *6 (E.D. Va. Mar. 29, 2024) ("The Court first concludes that the Motion to Dismiss is not premature because Draiver proffers no factual allegations regarding inventiveness or whether the claim elements are well-understood, routine, or conventional.").

Accordingly, Footage Firm's Section 101 arguments are premature in that they hinge on disputed issues of fact. In any event, they are wholly without merit.

### E. In the Alternative, Leave to Amend Should Be Granted.

To the extent the Court is inclined to grant Footage Firm's Motion in any respect, the Court should permit leave to amend to allow Plaintiff to add additional allegations supporting the '643 Patent's eligibility under Section 101. *See Mad Dogg Athletics, Inc. v. Peloton Interactive, Inc.*, No. 2:20-CV-00382-JRG, 2021 WL 4206175, at *7 (E.D. Tex. Sept. 15, 2021) ("The Court should freely grant leave to amend, and the district court must have a "substantial reason" to deny a request to amend a pleading." (citing Fed. R. Civ. P. 15(a)); *Aatrix*, 882 F.3d at 1126; *Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)); *Diatek Licensing LLC v. AccuWeather, Inc*., No. 21 CIV. 11144 (JPC), 2023 WL 2632178, at *12

13

(S.D.N.Y. Mar. 24, 2023) ("the Court will grant Plaintiff leave to file a Second Amended Complaint, in the event that Plaintiff believes it can plead facts that would make plausible the inference that the activities recited in at least one of the Asserted Claims were not well-understood, routine, or conventional… while Plaintiff has already amended the Complaint once, that amendment occurred before the Court's discussion, in this Opinion and Order, of the sort of allegations that would be required for Plaintiff to defeat a motion to dismiss.").

Allowing Plaintiff to amend in order to add additional allegations would not be futile, as they would support Plaintiff's position that, at Step Two of the Section 101 analysis, the claimed methods are directed to inventive concepts that that addressed technical deficiencies in the prior art and improved computer functionality. *See Intellectual Ventures II LLC*, 2017 WL 6002762, at *2 n. 1 (E.D. Tex. 2017) (warning against "improperly" "conclud[ing] that certain concepts are conventional or routine by way of judicial notice"); *Berkheimer*, 881 F.3d at 1368; *Cellspin Soft*, 927 F.3d at 1317; *Aatrix*, 882 F.3d at 1126.

Rather than dismiss with prejudice, Plaintiff should be allowed leave to amend to cure any deficiencies the Court may find.

## IV.    CONCLUSION

Accordingly, Footage Firm's Motion should be **DENIED**. In the alternative, Plaintiff would ask that the Court grant leave to amend.


Dated: February 28, 2025                 Respectfully submitted,

                                          /s/ Isaac Rabicoff
                                          Isaac Rabicoff
                                          Rabicoff Law LLC
                                          4311 N Ravenswood Ave Suite 315
                                          Chicago, IL 60613
                                          7736694590
                                          isaac@rabilaw.com

                                          **Counsel for Plaintiff**
                                          **Gamehancement, LLC**
                                          14

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing document to be electronically filed with the

Clerk of the Court using the CM/ECF system for the Eastern District of Virginia and that ECF

system will send a Notice of Electronic Filing to the CM/ECF participants in this case on the

28th day of February, 2025.

/s/ Isaac Rabicoff
Isaac Rabicoff
Rabicoff Law LLC
www.RabiLaw.com
4311 N Ravenswood Ave Suite 315
Chicago, IL 60613
773.669.4590
isaac@rabilaw.com

**Counsel for Plaintiff**
**Gamehancement, LLC**