IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

GAMEHANCEMENT LLC,

      Plaintiff,

v.                                                    Civil Action No. 3:24cv740

FOOTAGE FIRM, INC.,

      Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Footage Firm, Inc.'s ("Footage Firm") Motion and Brief in Support to Dismiss for Failure to State a Claim Based on 35 U.S.C. § 101 (the "Motion"). (ECF No. 16.)[1] Plaintiff Gamehancement LLC ("Gamehancement") responded in opposition to the Motion, (ECF No. 21), and Footage Firm replied, (ECF No. 22).

The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process.

For the reasons articulated below, the Court will grant the Motion to Dismiss. (ECF No. 16.)

---

[1] When citing the parties' briefing, the Court employs the pagination assigned by the CM/ECF docketing system. When citing the patent at issue in this case, the Court employs the pagination of the patent itself.

## I. Factual and Procedural Background

### A.    Factual Background[2]

This lawsuit arises from Footage Firm's alleged infringement of Gamehancement's

patent, which offers a method for allowing specific transition effects in slideshows to be

predefined between any potential pair of slides or "display configuration states." (ECF No. 12

¶ 16.) This allows presenters to "alter the planned sequence" of their slideshows while retaining

their desired transition effects between slides. (ECF No. 12 ¶ 19.)

### 1.    The Parties

Defendant Footage Firm and Plaintiff Gamehancement are both Delaware corporations.

(ECF No. 12 ¶¶ 2–3.) Footage Firm offers "a subscription-based service (plug-in) designed for

video generation platforms" called "Storyblocks Plug-in." (ECF No. 12-2, at 2.)

Gamehancement owns United States Patent No. 7,102,643 (the "'643 Patent"). (ECF No.

12 ¶ 8.) The '643 Patent, entitled "Method and Apparatus for Controlling the Visual

Presentation of Data," was issued on September 5, 2006. (ECF No. 12-1, at 2.) Gamehancement

alleges that Footage Firm "directly infringed one or more claims of the '643 Patent" through

products that it makes and sells. (ECF No. 12 ¶ 24.) Gamehancement also alleges that

"numerous other devices that infringed on the claims of the '643 Patent have been made, used,

sold, imported, and offered for sale by [Footage Firm] and/or its customers" and that Footage

---

[2] In considering the Motion to Dismiss, (ECF No. 16), the Court assumes the well-pleaded factual allegations in the Amended Complaint to be true and views them in the light most favorable to the Plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992); *see also Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) ("[I]n the event of conflict between the bare allegations of the complaint and any attached exhibit . . . , the exhibit prevails.").

Firm had "its employees internally test and use these" infringing products. (ECF No. 12 ¶¶ 24–25.)

### 2.    The Asserted Patent

According to Gamehancement, the '643 Patent addresses "significant 'shortcoming[s]'" in "multimedia slideshow applications." (ECF No. 12 ¶ 11 (quoting '643 Patent, at 2:3–4).) "[I]t is often the case that, during [a slideshow] presentation, the slides will be presented out of their predetermined order[, ]whether in response to viewer inquiries . . . or in response to ad lib decisions made during the presentation[.]" ('643 Patent, at 6:65–7:3.) Gamehancement explains that, prior to the inventions of the '643 Patent, when slides were presented out of sequence, the transitions between those slides could cause confusion for an audience:

> [I]f presenters deviated from a planned sequence during live presentations—for instance, to address audience questions—presentations made using prior art methods and systems would either display inappropriate transition effects that were incongruous with the actual transition being made, disrupting the flow of information to viewers, or would default to basic "straight cut" transitions that appeared unprofessional and jarred viewers' attention away from the presentation content.

(ECF No. 12 ¶ 12.) Gamehancement alleges that the '643 Patent addresses this concern by providing for "dynamic, non-linear navigation of slides during live presentations . . . without compromising the professional quality of the visual experience." (ECF No. 12 ¶ 13.)

Specifically, the '643 Patent claims "a method that associates specific transition effects with each potential pair of display configuration states, enabling the presenter to display aesthetically appropriate transitions in real-time while navigating between slides." (ECF No. 12 ¶ 16.) Under the method claimed by the '643 Patent, transition effects between every potential pair of slides are "predefined for all [slide] transitions that may occur during a presentation." ('643 Patent, at 7:10–12.) The '643 Patent offers the example of a hypothetical slideshow, in

3

which "the transition effect planned for a transition from slide 4 to slide 5 may not be appropriate for a transition from slide 4 back to slide 2." ('643 Patent, at 7:4–6.) Under the method claimed by the '643 Patent, transition effects from slide 4 to slide 5, from slide 4 back to slide 2, and so on, are all "predefined," such that there is no "possibility of an inappropriate transition effect being implemented during the presentation." ('643 Patent, at 7:10–14.)

The '643 Patent states that "it is important that . . . unskilled/untrained users have access to a presentation tool that will provide the functionality of a trained and intelligent director" such that appropriate and aesthetic transition effects can be included even in amateur presentations. ('643 Patent, at 1:66–2:2.) Gamehancement alleges that the '643 Patent contributed to this goal in that it "fundamentally improved the efficiency of presentation methods . . . by eliminating the computer processing overhead required to handle transition effect configurations" and by "spar[ing] users from the time-consuming operations of navigating to an appropriate transition effect." (ECF No. 12 ¶¶ 17, 20.) The '643 Patent applies its method to multimedia slideshow presentations conducted in person, in videoconferences, in video phone calls, and in other video productions. ('643 Patent, at 5:2–4.) The '643 Patent also applies its method to a variety of computers and hardware that may be used to implement the method. ('643 Patent, at 19:1–45.)

The '643 Patent contains nine independent claims, each of which relate to display configuration states in the presentation of data. ('643 Patent, at 15:14–24:25.) Those independent claims consist of Claims 1, 16, 32, 37, 53, 62, 65, 74, and 77. ('643 Patent, at 15:14–24:25.) Claim 16 reads as follows:

> **16.** A method of controlling a visual presentation of data to a viewer, the visual presentation comprising a plurality of display configuration states through which data content is presented to a viewer, the presentation being responsive to transition input to transition from a current visual display configuration state to a next visual display configuration state, the method comprising:

4

providing a plurality of transition effects;

for each pair of potentially successive visual display configuration states, associating a transition effect therewith;

receiving transition input indicative to transition from a current visual display configuration state to a next visual display configuration state, the transition defining a pair of successive visual display configuration states; and

during the transition from the current visual display configuration state and the next visual display configuration state, presenting to the viewer the transition effect associated with the defined pair of successive visual display configuration states.

('643 Patent, at 16:61–17:14.)  "The Court need not specifically address each asserted claim. Where the claims are 'substantially similar and linked to the same abstract idea,' analyzing a representative claim is sufficient." *CalAmp Wireless Networks Corp. v. ORBCOMM, Inc.*, 233 F. Supp. 3d 509, 512 n.1 (E.D. Va. 2017) (quoting *Content Extraction & Transmission LLC*, 776 F.3d at 1348).  Footage Firm argues that Claim 16 of the '643 Patent is representative of the other claims listed in the patent.  (ECF No. 16, at 3–4.)  While Gamehancement does not allege that Claim 16 is representative,[3] it does allege that the '643 Patent's "inventive concepts[] are captured in the limitations of Claim 16[.]"  (ECF No. 12 ¶ 21.)  Because the parties present this motion presuming that Claim 16 is representative, the Court concludes that Claim 16 is representative.

_____

[3] Gamehancement also does not *dispute* that Claim 16 is representative.  Rather, Gamehancement makes no allegations nor arguments regarding whether any claim in the '643 Patent is representative.  Clearly, Gamehancement's briefing presumes that Claim 16 is representative.

### 3.    The Accused Product

Footage Firm offers a subscription-based service known as "Storyblocks Plug-in" which is "designed for video generation platforms" (the "Accused Product"). (ECF No. 12-2, at 2.) The Accused Product allows users to access an "extensive library of digital assets" that may be utilized in user-created videos. (ECF No. 12-2, at 2.) These assets include transition effects, such as "Slide, Bounce, and Rotate" which the user can choose to add between each pair of successive clips in a video presentation. (ECF No. 12-2, at 2.)



(*See* ECF No. 12-2, at 5.)

To add the selected transition effect in the Footage Film project, the user "drags and drops it in [a] timeline between successive video clips." (ECF No. 12-2, at 10.)

6



(*See* ECF No. 12-2, at 9.)



(*See* ECF No. 12-2, at 11.)

### B.    Procedural History

On October 19, 2024, Gamehancement filed a Complaint against Footage Firm, alleging

infringement of its '643 Patent. (ECF No. 1 ¶¶ 9–14.) On December 13, 2024, after requesting

and receiving an extension of time to respond to the Complaint, Footage Firm filed a Motion to

Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 10.)

7

On January 17, 2025, Gamehancement filed an Amended Complaint alleging infringement of the same patent.[4]  (ECF No. 12 ¶¶ 9–27.)  On January 30, 2025, the Court denied as moot Footage Firm's initial Motion to Dismiss.  (ECF No. 13, at 2.)

On January 31, 2025, Footage Firm filed the present Motion to Dismiss.  (ECF No. 16.)  After requesting and receiving an extension, Gamehancement responded in opposition on February 28, 2025, (ECF No. 21), and Footage Firm replied on March 14, 2025, (ECF No. 22).  Accordingly, the matter is ripe for disposition.  For the reasons that follow, the Court will grant Footage Firm's Motion.  (ECF No. 16.)

## II.  Standards of Review

### A.    Rule 12(b)(6)

Under Rule 12(b)(6), a defendant may move to dismiss a claim for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Application of Rule 12(b)(6) in patent cases is a procedural question and is therefore governed by the law of the regional circuits.  *Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935, 937 (Fed. Cir. 2003).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual

---

[4] While not relevant to the case at bar, in 2024, Gamehancement challenged different products six times in Texas federal courts all of which appear to have been voluntarily dismissed:  *Gamehancement LLC v. Envato Pty Ltd.*, 2:24-cv-842 (E.D. Tex.); *Gamehancement LLC v. Synthesia Ltd.*, 2:24-cv-581 (E.D. Tex); *Gamenhancement LLC v. Ascensio Systems, Inc.*, 2:24-cv-831 (E.D. Tex.); *Gamehancement LLC v. CyberLink Corp.*, 2:24-cv-832 (E.D. Tex.); *Gamehancement LLC v. Zoho Corp.*, 6:24-cv-854 (W.D.Tex.); and *Gamehancement LLC v. Canva US, Inc,*, 6:23-cv-840 (W.D. Tex.).

information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193 (citation omitted). The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (concluding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011))). This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

**B.**    **Patent Eligibility Under 35 U.S.C. § 101:  the *Alice* Test**

Courts have recognized that "a 'plausible claim for relief in a patent infringement case necessarily requires a valid patent.  [Without one,] there can be no infringement.'" *Va. Innovation Scis. Inc. v. Amazon.com, Inc. ("VIS")*, 227 F. Supp. 3d 582, 591 (E.D. Va. 2017) (quotation omitted) (citing *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010)).  "Patent eligibility under 35 U.S.C. § 101 is a question of law." *VIS*, 227 F. Supp. 3d at 590 (citing *OIP Techs. Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015)).

"Section 101 of the Patent Act defines the subject matter eligible for patent protection." *Alice Corp. Pty. v. CLS Bank Int'l ("Alice")*, 573 U.S. 208, 216 (2014).  It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 101.

"The Supreme Court has long held that there are several important exceptions to this provision; that is, '[l]aws of nature, natural phenomena, and abstract ideas are not patentable.'" *Peschke Map Techs. LLC v. Rouse Properties Inc. ("Peschke")*, 168 F. Supp. 3d 881, 886 (E.D. Va. 2016) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc. ("Mayo")*, 566 U.S. 66, 70 (2012))).  However, because laws of nature, natural phenomena, and abstract ideas comprise "the basic tools of scientific and technological work," the Supreme Court has also expressed concern that these exceptions would "swallow all of patent law." *Alice*, 573 U.S. at 216–17 (internal quotation marks and citations omitted).

In *Mayo*, the Supreme Court "set forth a framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217 (citing *Mayo*, 566 U.S. 70–73). *Alice* clarified that "[u]nder this framework, the § 101 eligibility inquiry proceeds in two steps." *VIS*, 227 F. Supp. 3d at 591 (citing *Alice*, 573 U.S. at 217). "First, a court must 'determine whether the claims at issue are directed to a patent-ineligible concept.'" *Peschke*, 168 F. Supp. 3d at 886–87 (quoting *Alice*, 573 U.S. at 217). Second, "[i]f the patent is directed at a law of nature, natural phenomena, or abstract idea, the court must consider whether the claims contain an 'inventive concept' that 'transform[s] the nature of the claim' into patent-eligible subject matter." *Peschke*, 168 F. Supp. 3d at 886–87 (quoting *Mayo*, 566 U.S. at 78–79). "If the claims do not sufficiently narrow the scope of the patent by providing this 'inventive concept,' then the patent is rendered ineligible." *VIS*, 227 F. Supp. 3d at 591 (quoting *Alice*, 573 U.S. at 217–18). This test is commonly referred to as "the *Alice* test," and its steps as "the *Alice* steps." *See, e.g.*, *Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 131 (Fed. Cir. 2022); *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018); *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016).

"Preemption is the touchstone of the § 101 inquiry." *VIS*, 227 F. Supp. 3d at 595. "At both stages of the [*Alice*] test, the goal is to determine whether the claimed invention is so extensive as to 'monopoliz[e] [the basic tools of scientific and technological work] through the grant of a patent [that] might tend to impede innovation more than it would tend to promote it[.]" *Id.* (quoting *Alice*, 573 U.S. at 216 (quoting *Mayo*, 566 U.S. at 71)).

In *Virginia Innovation Sciences, Inc.*, the district court articulated the delicate balance that courts must strike in applying the patent eligibility framework:

11

> Articulating the scope of a patent's subject matter is not a precise science. Courts must be careful not to overgeneralize claims because, "if carried to its extreme, [it would make] all inventions un-patentable because all inventions can be reduced to underlying principles of nature." On the other hand, the judicial inquiry should endeavor to root out creative "drafting effort[s] designed to monopolize the [abstract idea]."

227 F. Supp. 3d at 592 (citations omitted).  Ultimately, it is Footage Firm's burden to demonstrate by clear and convincing evidence that the '643 Patent fails the *Alice* test.

### III. Analysis

Footage Firm seeks relief on the ground that "the claims of the '643 [P]atent are ineligible for patent protection under 35 U.S.C. § 101." (ECF No. 16, at 6.)  In its Opposition, Gamehancement argues that the Motion to Dismiss is premature, that claim construction should precede the § 101 analysis, and that the challenged patent claims are patent-eligible inventive concepts under § 101.  (ECF No. 21, at 5–7.)  It is established that Claim 16 is representative.[5] (ECF No. 16, at 9; ECF No. 21, at 4–6.)

First, the Court concludes that the Motion to Dismiss is not premature. Gamehancement's conclusory legal assertions are not entitled to a presumption of truth, and after disregarding these legal conclusions, the Court sees no *factual* allegations in the Amended Complaint that would preclude resolution at the Rule 12(b)(6) stage.

---

[5] "The Court need not specifically address each asserted claim.  Where the claims are 'substantially similar and linked to the same abstract idea,' analyzing a representative claim is sufficient." *CalAmp Wireless Networks Corp. v. ORBCOMM, Inc.*, 233 F. Supp. 3d 509, 512 n.1 (E.D. Va. 2017) (quoting *Content Extraction & Transmission LLC*, 776 F.3d at 1348).  "Courts may treat a claim as representative . . . if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative." *Berkheimer v. HP, Inc.*, 881 F.3d at 1365; *Fast 101 Pty Ltd. v. CitiGroup Inc.*, 834 F. App'x 591, 592 (Fed. Cir. 2020) (affirming quoting *Berkheimer* for this proposition); *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1358 n.2 (Fed. Cir. 2023) (same).

Second, claim construction need not precede the § 101 analysis because Gamehancement fails to assert a competing construction or articulate how such construction would alter the § 101 analysis, and because "the 'basic character of the claimed subject matter is readily ascertainable from the face of the patent.'" *See VIS*, 227 F. Supp. 3d at 590 (citations omitted).

Third, the Court evaluates the eligibility of the challenged patent claims pursuant to the *Alice* test, which is discussed in detail below. At *Alice* Step One, the asserted claims are directed to the abstract idea of applying transition effects between visual displays. At *Alice* Step Two, the asserted claims fail to supply an inventive concept. Accordingly, all asserted patent claims are ineligible for patent protection under § 101.

### A.    The Motion to Dismiss is Not Premature

Gamehancement argues that Footage Firm's Motion should be denied because "it raises factual [] issues that cannot be resolved at this stage—such as whether the claimed methods are 'conventional.'" (ECF No. 21, at 5–6.) However, Gamehancement offers no factual support for its conclusory assertion that the '643 Patent addresses technical problems through unconventional methods. Gamehancement does not explain *how* its patent overcomes shortcomings of prior art, *how* the automatic association of transition effects is achieved, nor *how* it eliminates computer processing overhead. Mere conclusory statements must be disregarded when evaluating a complaint on a 12(b)(6) motion to dismiss. *See Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) (disregarding conclusory statements, such as the "statement that a feature 'improves the functioning and operations of the computer.'")

The Court cannot deem the Motion to Dismiss premature because Gamehancement's conclusory legal assertions are not entitled to a presumption of truth, and "[a]fter disregarding

13

these legal conclusions, the Court finds no factual allegations in the Amended Complaint that would preclude resolution at the Rule 12(b)(6) stage." *DriverDo, LLC v. Soc. Auto Transp., Inc.*, – F. Supp. 3d. –, 2024 WL 1376218, at *8 (E.D. Va. 2024).

### 1.   <u>Legal Standard:  No Presumption of Truth for Legal Assertions</u>

In ruling on a Rule 12(b)(6) Motion to Dismiss, courts need not accept *all* allegations as true.  *See, e.g., Yu v. Apple, Inc.*, 1 F.4th 1040, 1046 (Fed. Cir. 2021) ("Here, the district court . . . concluded that the claims were directed to patent-ineligible subject matter, *despite Yu's allegations to the contrary.  This is not error.*" (emphasis added)).  Courts may reject "attempt[s] to manufacture a factual question" that in actuality "provide no more than a series of legal conclusion[s] about the § 101 analysis." *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020) (discarding plaintiff's allegations "that each of the patents solves given technological problems" where plaintiff "never provide[d] more support than a conclusory statement that 'the inventions described and claimed . . . solved these problems,' improved the art, 'represented a significant advance over existing approaches[,] and were not well-known, routine, or conventional") (citing *Papasan v. Allain*, 478 U.S. 265, 268 (1986) (on a motion to dismiss, courts "must take all the factual allegations in the complaint as true" but "are not bound to accept as true a legal conclusion couched as a factual allegation")).

### 2.   **Gamehancement's Conclusory Legal Assertions Are Not Entitled to a Presumption of Truth, and Gamehancement Makes No Specific Factual Assertions That Would Preclude Resolution on a Rule 12(b)(6) Motion to Dismiss**

Although Gamehancement's Amended Complaint asserts that the '643 Patent "addressed . . . technical problems through inventive and unconventional methods" it offers only non-specific and results-based language in support of this statement.  Gamehancement argues that the '643 Patent's "method . . . associates specific transition effects with each potential pair

of display configuration states," thereby "allowing appropriate transition effects for any possible transition between display states." (ECF No. 12 ¶ 16.)  Such assertions "provide no more than a series of legal conclusion[s] about the § 101 analysis," *Dropbox*, 815 F. App'x at 538, and as such are not entitled to the assumption of truth "because they are no more than conclusions." *Iqbal*, 556 U.S. at 679.

For instance, this case is readily distinguishable from *Aatrix Software, Inc. v. Green Shades Software, Inc. ("Aatrix")*, in which the Federal Circuit vacated a district court's grant of a motion to dismiss pursuant to § 101 after determining that "concrete allegations" in the second amended complaint "precluded the [district] court's conclusion that the claimed data file [wa]s a well[-]understood and routine component and function of a computer." 882 F.3d 1121, 1128–30 (Fed. Cir. 2018) (internal quotation marks omitted).  The *Aatrix* patents were "directed to systems and methods for designing, creating, and importing data into a viewable form on a computer so that a user can manipulate the form data and create viewable forms and reports." *Id.* at 1123.  In vacating the dismissal, the Federal Circuit observed that "[t]here are *concrete allegations* in the second amended complaint that individual elements and the claimed combination are not well-understood, routine, or conventional activity" and "*concrete allegations* regarding the claimed combination's improvement to the functioning of the computer." *Id.* at 1128 (emphases added).  Specifically, the second amended complaint explained that the "prior art . . . allowed data to be extracted only from widely available databases with published database schemes, not [from] proprietary data structures." *Id.* at 1127. The patent "improve[d] interoperability with third-party software" because it "import[ed] data from third-party applications into a viewable electronic form." *Id.* at 1129.  The second amended complaint also specifically alleged that the patented invention "increased the efficiencies of

computers processing tax forms", "saved storage space", and "reduce[d] the risk of 'thrashing.'" *Id.* at 1127. "In light of the[se] allegations . . . , the district court could not conclude at the Rule 12(b)(6) stage that the claimed elements were well-understood, routine, or conventional." *Id.* at 1129.

Here, in contrast, the Amended Complaint asserts only one technological innovation, which it claims overcame a "shortcoming" of prior art that would arise when slides were presented out of order. (ECF No. 12 ¶¶ 10–20.) However, even regarding this allegation, Gamehancement offers only conclusory assertions in support, with no factual details regarding *how* this innovation is achieved beyond the abstract idea of automating the transitions between slides. (*See, e.g.*, ECF No. 12 ¶ 16 "[t]he '643 Patent addressed these technical problems through inventive and unconventional methods allowing appropriate transition effects for any possible transition between display states"; ECF No. 12 ¶ 17 "[t]he claimed methods fundamentally improved the efficiency of presentation methods, particularly when performed on computer-based presentation systems, by eliminating the computer processing overhead required to handle transition effect configurations.") Gamehancement does not describe *how* computer processing overhead is eliminated nor *how* the automatic association of transition effects is achieved. The '643 Patent meanwhile, states that "[t]he present invention is preferably implemented as software," but does not describe what form that software might take. ('643 Patent, at 3:64–65.)

Gamehancement's assertion that "[t]he claimed methods enabled new functionality that was not previously possible, including truly dynamic, non-linear navigation during live presentations while maintaining professional-quality transitions," is similarly conclusory. (ECF No. 12 ¶ 17.) Gamehancement does not explain *how* this "new functionality" is achieved, thus

offering the Court no evidence of what more the claim adds to the abstract idea of transition effects.

The Court sees no factual allegations in the Amended Complaint that would preclude resolution at the Rule 12(b)(6) stage. *See Aatrix*, 882 F.3d at 1129. The Motion to Dismiss is not premature.

### B. Claim Construction Need Not Precede the § 101 Analysis in this Case

Next, Gamehancement urges the Court to issue a claim construction before analyzing the '643 Patent's § 101 eligibility. (ECF No. 21, at 6.) While many courts have done so, a delay in order to conduct claim construction is not appropriate here. *Compare with Bell Semiconductor, LLC v. NXP USA, Inc.*, 653 F. Supp. 3d 767, 774–77 (S.D. Cal. 2023) (holding that § 101 analysis was premature because the parties "present[ed] a clear claim construction dispute" by articulating competing constructions of patent).

Because Gamehancement fails to allege any competing construction or articulate how any such construction would alter the § 101 analysis, and because "the 'basic character of the claimed subject matter is readily ascertainable from the face of the patent,'" claim construction need not precede the § 101 analysis in this case. *See VIS*, 227 F. Supp. 3d at 590 (citations omitted); *DriverDo*, 2024 WL 1376218, at *6.

### 1. Legal Standard: Sequencing of Eligibility Determination and Claim Construction

"Patent eligibility under 35 U.S.C. § 101 is a question of law." *VIS*, 227 F. Supp. 3d at 590, 599 (citing *OIP Techs. Inc.*, 788 F.3d at 1362) (contrasting the eligibility determination under § 101 as a question of law with the obviousness determination under § 103 as a "mixed question of law and fact"). "Although the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, claim construction is not an

inviolable prerequisite to a validity determination under § 101." *Content Extraction &*
*Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).
"Addressing . . . § 101 at the outset not only conserves scarce judicial resources and spares
litigants the staggering costs associated with discovery and protracted claim construction
litigation, it also works to stem the tide of vexatious suits brought by the owners of vague and
overbroad business method patents." *OIP Techs., Inc.*, 788 F.3d at 1364 (Mayer, J., concurring).

"While the ultimate determination of eligibility under § 101 is a question of law, like
many legal questions, there can be subsidiary fact questions which must be resolved en route to
the ultimate legal determination." *Aatrix Software, Inc. v. Green Shades Software, Inc., 882 F.3d
1121, 1128 (Fed. Cir. 2018)*. Accordingly, "'it will ordinarily be desirable—and often
necessary—to resolve claim construction disputes prior to a § 101 analysis.'" *Peschke Map
Techs. LLC v. Rouse Properties Inc. ("Peschke")*, 168 F. Supp. 3d 881, 884 (E.D. Va. 2016)
(quoting *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.) ("Bancorp")*, 687 F.3d
1266, 1273 (Fed. Cir. 2012)). However, the United States Court of Appeals for the Federal
Circuit "has made clear that there is no 'bright line rule requiring district courts to construe
claims before determining subject matter eligibility.'" *Id.* (quoting *Ultramercial, LLC v. Hulu,
LLC*, 657 F.3d 1323, 1325 (Fed. Cir. 2011), *cert. granted, judgment vacated sub nom.
WildTangent, Inc. v. Ultramercial, LLC*, 566 U.S. 1007 (2012)).

For example, "there is no claim construction dispute relevant to eligibility [where the
court] can fully understand the basic character of the claims without claim construction." *Reese
v. Sprint Nextel Corp.*, 774 F. App'x 656, 660 (Fed. Cir. 2019); *see also VIS*, 227 F. Supp. 3d at
590 ("[W]hen the 'basic character of the claimed subject matter is readily ascertainable from the
face of the patent,' courts may determine patent-eligibility at the motion to dismiss phase."

(citing *Internet Patents Corp. v. Gen. Auto. Ins. Servs., Inc.*, 29 F. Supp. 3d 1264, 1268 (N.D. Cal. 2013), *aff'd sub nom. Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015)); *Fairwarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089 (Fed. Cir. 2016)).  "No formal claim construction [is] required [where] the asserted claims disclose[] no more than 'an abstract idea garnished with accessories' and there [is] no 'reasonable construction that [c]ould bring [them] within patentable subject matter." *Ultramercial,* 772 F.3d at 719 (Mayer, J., concurring) (last alteration in original).

Further, a litigant who "fail[s] to request claim construction [before the district court]" and "fail[s] to explain how a different construction of any claim term would lead to a different result" has waived such arguments.  *WhitServe LLC v. Dropbox, Inc.*, 854 F. App'x 367, 373 (Fed. Cir. 2021) (citing *Abbott Labs. v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1357 (Fed. Cir. 2003) (determining that a litigant who "d[oes] not urge a particular claim construction of the disputed language before the district court[] . . . waive[s] the right to do so on appeal")).

In sum, to assert a claim construction dispute, a party must submit a competing construction or at least articulate why a differing construction would impact the analysis, rather than simply claiming in a conclusory fashion that the other party has misconstrued a particular claim.

> **2.     Gamehancement Fails to Propose a Competing Claim Construction or Explain How a Different Construction Would Alter the § 101 Analysis, and the Basic Character of the Claimed Subject Matter Is <u>Ascertainable on the Face of the Patent</u>**

Gamehancement argues that "many courts have found 'it is wiser and more efficient to wait to determine a patent's § 101 eligibility until after fact discovery has opened' and 'after issuing its claim construction order.'" (ECF No. 21, at 6 (quoting *Slyce Acquisition Inc. v. Syte - Visual Conception Ltd.*, No. W-19-cv-257, 2020 WL 278481, *3–7 (W.D. Tex. Jan. 10, 2020).)

Here, however, no formal claim construction is necessary.  This Court has previously ruled that "to assert a claim construction dispute, a party must submit a competing construction or at least articulate why a differing construction would impact the analysis, rather than simply claiming in a conclusory fashion that the other party has misconstrued a particular claim." *DriverDo, LLC*, 2024 WL 1376218, at *9.  Gamehancement has failed to do so here.

Even if Gamehancement had articulated a competing claim construction, "the basic character of the claimed subject matter can be readily ascertained from the face of the patent[]." *DriverDo*, 2024 WL 1376218 at *10.  The '643 Patent's subject matter relates to "controlling the transitions between different states of a visual presentation."  ('643 Patent, at 1:20–22.) Having reviewed the representative and all other claims in the '643 Patent, the Court can fully understand the basic character of the subject matter of the claims as it relates to transition effects in visual displays from the subject matter itself.  The patent's method smoothly presents slides, even when a presenter chooses to address slides out of order, by automatically associating transition effects with any potential pair of display states.  As a result, "claim construction is not necessary before determining the eligibility of the claimed patents." *DriverDo*, 2024 WL 1376218 at *10, 17.[6]

### C.    <u>Patent Eligibility Inquiry Under § 101</u>

Having determined that claim construction need not precede the § 101 analysis, the Court next assesses the '643 Patent's eligibility under § 101.  As described above, the parties

---

[6] Separately, as the Court discusses in more detail below, the asserted claims of the '643 Patent are directed to abstract ideas, nothing in the challenged claims provides an inventive concept, and as a result the challenged claims are ineligible for patent protection.  "No formal claim construction [is] required [where] the asserted claims disclose[] no more than 'an abstract idea garnished with accessories' and there [is] no 'reasonable construction that [c]ould bring [them] within patentable subject matter." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014) (Mayer, J., concurring) (last alteration in original).

seemingly agree that Claim 16 is representative. (ECF No. 16, at 9; ECF No. 21, at 4–6.) The Court's analysis proceeds in three steps.

First, the Court notes that the patent examiner's evaluation is not dispositive. Second, applying Step One of the *Alice* test, the Court concludes that the asserted claims, for which Claim 16 is representative, are directed at abstract ideas. Specifically, the '643 Patent goes to the concept of implementing transition effects in the visual presentation of data in a digital environment. Third and finally, Court concludes that nothing in the challenged claims provides an inventive concept because the claims merely implement abstract ideas. Accordingly, all challenged claims are ineligible for patent protection.

### 1.    The Patent Examiner's § 101 Evaluation Is Not Dispositive

As a threshold matter, the Court notes that the patent examiner's § 101 evaluation is not dispositive. "[N]umerous district courts across the country have found claims ineligible even where a patent examiner had previously considered § 101 and found the claims eligible." *DriverDo, LLC*, 2024 WL 1376218, at *11 (collecting cases). As a result, the Court will turn to "evaluating whether [Footage Firm] has demonstrated, by clear and convincing evidence, that the patents—which are presumed valid—are ineligible." *Id.* (citing *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019)). Having concluded that the patent examiner's § 101 evaluation is not dispositive, the Court now turns to Step One of the *Alice* framework.

### 2.    Legal Standard: *Alice* Step One

"The abstract ideas category embodies the longstanding rule that an idea of itself is not patentable." *Alice Corp. Pty. v. CLS Bank Int'l ("Alice")*, 573 U.S. 208, 218 (2014) (citations and quotations omitted). "[T]he first-stage inquiry [] look[s] at the 'focus' of the claims, their 'character as a whole.'" *Elec. Power Grp., LLC v. Alstom S.A. ("Elec. Power")*, 830 F.3d 1350,

1353 (Fed. Cir. 2016) (citations omitted). Among things deemed to be abstract ideas are "mathematical algorithms", "longstanding commercial practices," "fundamental economic practice[s]", and other "well-understood, routine conventional activit[ies]." *DDR Holding, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256–57, 1265 (Fed. Cir. 2014) (further citations omitted); *Bilski v. Kappos*, 561 U.S. 593, 611 (2010); *OIP Techs., Inc.*, 788 F.3d at 1363; *Mayo Collaborative Servs. v. Prometheus Labs., Inc. ("Mayo")*, 566 U.S. 66, 79 (2012).

"In addressing the first step of the [§] 101 inquiry, as applied to a computer-implemented invention, it is often helpful to ask whether the claims are directed to 'an improvement in the functioning of a computer,' or merely 'adding conventional computer components to well-known business practices.'" *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1270 (Fed. Cir. 2016) (quoting *Enfish, LLC v. Microsoft Corp. ("Enfish")*, 822 F.3d 1327, 1338 (Fed. Cir. 2016)). This is so because "tying an abstract idea to a general[-]purpose computer or to the Internet, without more, is generally insufficient to make an abstract idea patentable." *In re TLI Communications LLC Patent Litigation ("In re TLI")*, 87 F. Supp. 3d 773, 784 (E.D. Va. 2015), *aff'd*, 823 F.3d 607 (Fed. Cir. 2016) (citing *Ultramercial, Inc.*, 772 F.3d at 715–17). "Distilled to a principle, . . . when claims are laid out in purely functional language and use conventional technology in a typical manner, they are not patent eligible." *VIS*, 227 F. Supp. 3d at 595 (citing *In re TLI Communications LLC Patent Litigation*, 823 F.3d 607 (Fed. Cir. 2016)). Indeed, "even 'very detailed software implementation guidelines' in the patent specifications will not save systems claims that 'only contained generalized software components arranged to implement an abstract concept on a computer.'" *VIS*, 227 F. Supp. 3d at 594 (quoting *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013)). Courts in this district

have observed that "[t]he invalidation of purely functional claims is a consistent theme in the Federal Circuit's recent § 101 jurisprudence." *Id.* at 595.

### 3.    The Claims of the '643 Patent Are Directed to an Abstract Idea

At *Alice* Step One, Footage Firm argues that the '643 Patent's claims "are directed to an abstract idea—namely, applying transition effects between visual displays—and merely use[] generic computer components and functions in a routine way to carry out that abstract idea" and further asserts that "the patent itself admits that the claims do nothing more than automate a manual process," specifically "replac[ing] a well-informed person with a generic device." (ECF No. 16, at 6, 14.) Footage Firm also emphasizes the breadth of the asserted claims, which "seemingly preempt the use of *any* transition effects during the presentation of data," based on "the wide variety of products that [Gamehancement] has accused of infringing on the '643 Patent without regard to specific implementation." (ECF No. 16, at 16 (emphasis in original).)

The '643 Patent is directed to an abstract idea. It deploys wholly generic computer elements in an entirely conventional way, without offering any improvements to the functioning of the computer, and recites purely functional language about how to achieve the abstract idea. *See DriverDo*, 2024 WL 1376218 at *17; *see also Interval Licensing LLC v. AOL, Inc.*, 896 F.3d at 1345 (Fed. Cir. 2018). The claims do not address a technological problem but instead describe generic and conventional video device functions that can be used to automate the selection of transition effects, a task which otherwise would need to be done by a "trained [human] director" to achieve a "professional production quality." ('643 Patent, at 1:35–36, 1:63–2:2.) A patent's purported invention "to automate [a] manual process on a conventional [device] using unspecified programming, without identifying the mechanisms by which to realize the outcome" is "not patentable." *DriverDo*, 2024 WL 1376218, at *25.

Gamehancement asserts that the '643 Patent claims "improved the efficiency of presentation methods, particularly when performed on computer-based presentation systems, by eliminating the computer processing overhead required to handle transition effect configurations." (ECF No. 12 ¶ 17.) This assertion merely refers to the abstract idea of automating the process of associating transition effects with any potential pair of display configuration states. Further, the claimed "new functionality . . . including truly dynamic, non-linear navigation during live presentations while maintaining professional-quality transitions," (ECF No. 12 ¶ 17), only relates to implementing the abstract idea in a more specific situation, and does not explain what about the *implementation* of this idea is unconventional.

Notably, addressing one specific shortcoming arising in out-of-sequence slideshows is the only alleged improvement on the prior art that Gamehancement argues, aside from the general idea of automatically associating transition effects. (*See generally* ECF No. 12.) The general idea of automating the role of a trained human director is precisely the kind of abstract idea that is excluded from patent eligibility. *See Cellspin*, 927 F.3d at 1316 ("the need to perform tasks automatically is not a unique technical problem"). The more specific idea—the method's claimed improvement for multimedia slideshows presented out of order—does not save the '643 Patent because "narrowing or reformulating an abstract idea does not add 'significantly more' to it." *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1291 (Fed. Cir. 2018). The narrower abstract idea is still abstract, and "[a]dding one abstract idea . . . to another abstract idea . . . does not render the claim non-abstract." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).

The "result-based functional language" in the '643 Patent is directed to the abstract idea of applying transition effects between visual displays, "but does not sufficiently describe how to

achieve these results in a non-abstract way." *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337–38 (Fed. Cir. 2017) (patent claim directed at abstract idea where the claim "recite[d] a method for routing information using result-based functional language."). For example, the '643 Patent makes several references to preferred and potential implementation methods. ('643 Patent, at 3:64–4:5 ("[t]he present invention is *preferably* implemented as software stored and executed on a network server . . . [or] software stored and executed on an individual . . . presenter computer. The software *may* be archived on any computer readable medium, such as a CD-ROM[.]") (emphasis added); '643 Patent, at 8:42–45 ("*Preferably*, the presenter can select the desired transition set at any point during the presentation to thereby automatically implement an aesthetic transition effect-limited change for the presentation[.]") (emphasis added)). These are references to generic computer components and conventional functionalities that *may* be used to implement the abstract idea, suggesting that other generic components and conventional methods might also fall under the '643 Patent, as these are not disclaimed. Indeed, the only method that Gamehancement notes to be explicitly disclaimed is "the problematic prior art methods of using transition effects" such that an inappropriate or unaesthetic default transition effect might be displayed. (ECF No. 21, at 10.)

Gamehancement argues that Claim 16 has a "specific limitation . . . requiring 'receiving transition input indicative to transition from a current visual display configuration state to a next visual display configuration state.'" (ECF No. 21, at 10 (quoting '643 Patent, at 17:5-7).) It contends that "read in the context of the entire claim, [this] provides ample explanation for how the technological solution is achieved." (ECF No. 21, at 10.) Not so. Notably, the '643 patent itself concedes that "transition effects and their associated animation techniques are readily

25

known in the art", and thus "the details of implementing various transition effects need not be set out herein." ('643 Patent, at 6:51–52.)

Despite Gamehancement's contention to the contrary, (*see* ECF No. 21, at 7), the patent in this case is also unlike those at issue in *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc. ("Core Wireless")*, 880 F.3d 1356 (Fed. Cir. 2018). There, the challenged claims sought to solve a problem with user interfaces on small-screen devices wherein "small screens 'tend[ed] to need data and functionality divided into many layers or views'" which had previously "required users to drill down through many layers to get to desired data or functionality." *Id.* at 1363. The claims "require[d] 'an application summary that can be reached directly from the menu'" and "further require[d] the application summary window [to] list a limited set of data." *Id.* at 1362. The Federal Circuit found, at *Alice* Step One, that these claims were "directed to an improved user interface for computing devices" because they were "directed to a particular manner of summarizing and presenting information in electronic devices . . . [and] disclose[d] a specific manner of displaying a limited set of information to the user, rather than using conventional user interface methods to display a generic index on a computer." *Id.* at 1362–63.

Unlike the idea for a direct display from a menu of a curated set of information, which differed from the prior art user interface methods used to display a generic index, here Gamehancement does not plausibly allege which aspects of its patent are unconventional. It repeatedly highlights the benefits of the method in the case where a multimedia slideshow is presented out of its planned order, but does not clarify *what* about its method of achieving this is unconventional, nor *how* this idea is directed toward anything more than the abstract idea of automating the selection of transition effects. "[W]hen claims are laid out in purely functional

language and use conventional technology in a typical manner, they are not patent eligible." *VIS*, 227 F. Supp. 3d at 595 (citation omitted).

For the reasons above, the Court concludes that the claims of the '643 Patent, for which Claim 16 is representative, are directed to the abstract idea of applying transition effects between visual displays.

The Court will now turn to Step Two of the *Alice* framework.

### 4.    <u>Legal Standard: *Alice* Step Two</u>

When the Court finds, as here, that the patent claims an abstract idea, Step Two of the *Alice* test asks whether the patent contains "'an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'" *Peschke*, 168 F. Supp. 3d at 889 (quoting *Alice*, 573 U.S. at 217–18 (citations and brackets omitted)). "A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'" *Id.* (quoting *Alice*, 573 U.S. at 221) (internal quotation marks omitted) (alterations in original). "To qualify as an inventive concept, the claims 'must do more than simply sta[t]e the [abstract idea] while adding the words 'apply it.'" *Id.* (quoting *Mayo*, 566 U.S. at 72) (second alteration in original).

Further, the inventive additional features "must be more than 'well-understood, routine, conventional activity.'" *Id.* (quoting *MicroStrategy Inc. v. Apttus Corp.*, 118 F. Supp. 3d 888, 893 (E.D. Va. 2015)); *see also Content Extraction & Transmission LLC*, 776 F.3d at 1348 (the recitation of "well-understood, routine, and conventional activities" does not supply an inventive concept). "[A]ppending conventional steps, specified at a high level of generality, [is] not *enough* to supply an inventive concept." *Alice*, 573 U.S. at 222 (emphasis in original) (citation

and internal quotation marks omitted); *see also Intellectual Ventures I LLC*, 792 F.3d at 1367

("A simple instruction to apply an abstract idea on a computer is not enough.") (citing *Alice*, 573

U.S. at 223); *Affinity Labs of Tex.*, 838 F.3d at 1271–72 ("[N]either the claim nor the

specification reveals any concrete way of employing a customized user interface," so the patent

"d[id] not embody an 'inventive concept'"). Similarly, "the fact that the required calculations

could be performed more efficiently via a computer does not materially alter the patent eligibility

of the claimed subject matter." *Bancorp*, 687 F.3d at 1278.

> **5. The Challenged Claims Lack an Inventive Concept to Transform the Abstract Idea to Patentable Subject Matter**

Regarding Alice Step Two, Footage Firm argues that "other than the abstract concept of

adding a transition effect, the claims recite nothing beyond generic computer elements." (ECF

No. 16, at 16 (emphasis omitted).) In particular, Footage Firm highlights the fact that the '643

Patent specification notes at several points that it is using "known and conventional technology,"

citing the following examples from the '643 Patent specification: "For example, the presenter

computer and viewer computer(s) may be hand-held PDAs or the like, or could be implemented

as a custom-designed software/hardware consumer product or chip set using one or more

existing technologies such as embedded CPU, FPGA, ASIC, DSP, etc."; "[f]urther, given that

such transition effects and their associated animation techniques are readily known in the art, the

details of implementing various transition effects need not be set out herein"; "[t]he details of

starting a multimedia slide show presentation via computer being known in the art, such details

need not be elaborated upon herein." (ECF No. 16, at 17 (internal citations omitted.))

Because the '643 patent is so expansive, covering multiple presentation types (e.g.,

multimedia slideshow presentations, videoconferences, and video phone calls) and methods of

input (i.e., both manual and automatic), Gamehancement asserts infringement based on the

28

abstract idea of including transition effects in the visual presentation of data, which the '643 Patent concedes to be "known in the art." ('643 Patent, at 6:3.)  The only potential limiting innovation that Gamehancement identifies relates to "predefin[ing] . . . all state transitions that may occur during a presentation", i.e., automating "the functionality of a trained and intelligent director." (ECF No. 12 ¶ 18; '643 Patent, at 1:63–2:2.)  However, as noted in the *Alice* Step One analysis, the idea of automating a task alone is not a "unique technical problem" and at *Alice* Step Two, Gamehancement has not offered any particular method of automation that would supply an innovative concept.  Instead, Gamehancement merely describes the steps to do so using generic computer components in conventional ways, which fails to "do more than simply sta[t]e the [abstract idea]" with mere suggestions for implementation. *Peschke*, 168 F. Supp. 3d at 889 (quoting *Mayo*, 566 U.S. at 72) (second alteration in original).

    While Gamehancement alleges that the "inventive and unconventional method of Claim 16 is not and cannot be performed in the human mind," Am. Comp. ¶ 22, the '643 Patent itself offers "unskilled/untrained users [to] have access to a presentation tool that will provide the functionality of a trained and intelligent director." ('643 Patent, at 1:63–2:2.)  To the extent Gamehancement's allegations suggest otherwise, the patent attached as an exhibit before the Court controls. *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).

    Even attempting to limit the '643 Patent's application to the specified "shortcoming"— which, notably, neither the '643 Patent specification nor Gamehancement's pleadings actually do—would not save it, because "narrowing or reformulating an abstract idea does not add 'significantly more' to it," *BSG*, 899 F.3d at 1291, and Gamehancement still fails to specify how

its method of associating aesthetic transition effects is achieved, and what is unconventional about it.

In summary, because the '643 Patent offers nothing more than suggestions for achieving the claimed method through the use of various generic computer components functioning in conventional ways, it fails to add any innovative concept to the idea of associating transition effects between visual displays.  Accordingly, Footage Firm has carried its burden of demonstrating by clear and convincing evidence that all asserted patent claims are ineligible for patent protection under § 101.

### IV.  The Court Will Deny Leave to Amend

In its Opposition, Gamehancement requests, in the alternative, that the Court grant it leave to file a Second Amended Complaint.  (ECF No. 21, at 13.)  In its Reply, Footage Firm opposes this request, arguing that any amendment would be futile.  (ECF No. 22, at 12.)

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave" to parties to amend pleadings "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, a "district court may deny leave to amend for reasons 'such as . . .  undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment[.]'"  *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 480 (4th Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards."  *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011).

Gamehancement has already placed two iterations of its Complaint before the

Court. (ECF Nos. 1, 12.) Despite having received a previous opportunity to amend, Gamehancement fails to cure the deficiencies in its previous attempt to present a patent infringement claim. *See Glaser*, 464 F.3d at 480.

In its Opposition, Gamehancement does not provide any facts or argument suggesting that the Court would conclude otherwise if presented with a Second Amended Complaint. (ECF No. 21, at 13–14.) Thus, a second amendment would cause undue prejudice to Footage Firm by requiring it to file a third responsive pleading. *Glaser*, 464 F.3d at 480. Indeed, the amendment likely would be futile. *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) ("Futility is apparent if the proposed amended complaint fails to state a claim under the rules and accompanying standards.") Thus, because any amendment would cause unnecessary delay and prejudice to Footage Firm, leave to amend will not be granted at this time.

### V.  Conclusion

For the reasons articulated above, the Court will grant the Motion without prejudice. (ECF No. 16.)

An appropriate Order shall issue.

Date: 09/10/25
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge